4225 11th Ave S.
Seattle, WA 98108

Allan Montgomery, ~~[redacted]~~ Sourth,
Seattle WA ~~[redacted]~~   amontgom@whiz.to

FILED ___ ENTERED
LODGED ___ RECEIVED

SG  DEC 13 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

IFP Pending / No Summ

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
OF WASHINGTON
AT SEATTLE

# 19 CV-02035 MJP

Allan Montgomery,

And a class of unknown-named plaintiffs exceeding 1000 in number,

Plaintiffs

v.

Rainier Beach Pool

Seattle Office of Civil Rights (SOCR)

Director of Seattle Office, Mariko Lockhart (SOCR)

Michael Chin, Enforcement Director, (SOCR)

Mayor of Seattle Washington, Jenny A. Durkan

Defendants

Jury Trial Demanded

Discovery Requested

## JURISDICTION AND VENUE

This is a Civil Action authorized by Title 42 of the United States Codes § 1983, § 1985, § 1986 and § 1988 to redress the deprivation under color of State Laws, and due to a Civil Rights violation and conspiracy, of rights, privileges, and immunities secured by the United States Constitution. This Court also derives Jurisdiction from the 1964 Civil Rights Act, hereinafter 1964 CRA, primarily Title VII. The Court has original jurisdiction pursuant to Title 28 of the United States Code § § 1331, 1343, and 1337.

There is additional jurisdiction under 28 USC § § 1332, 1346, 1367. There is federal-question jurisdiction.

The amount in controversy exceeds (exclusive of costs and interests) the amount of one hundred thousand dollars ($100,000.00 US).

Washington State Anti-Discrimination Law Is:

RCW 49.60.030 which states, in part:

Freedom from discrimination—Declaration of civil rights.

(1) **The right to be free from discrimination because of** race, creed, color, national origin, **sex,** honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability is recognized as and declared to be a civil right.

### Class Action Jurisdiction

This is also class-action complaint under Rule 23 of the Federal Rules of Civil Procedure. The class is so numerous that joinder of all members is impractical, and there are questions of law and/or facts common to the class, and the claims or defenses of the

representative parties are typical of the claims or defenses of the class. The representative party, Allan Montgomery, will fairly and adequately protect the interests of the class, with the assistance of an appointed class attorney. Prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Also, adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Also, the parties opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The questions of law or fact common to the members of the class predominate over any questions affecting individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

According to F.R.Civ.P 23(g), the court is obliged to appoint an attorney for a class, in order to ensure that the class is properly represented.

### Instant Motion for Appointed Representation

Plaintiff Montgomery has sought representation from X Seattle Civil Rights Law Firms. (See list attached.) Montgomery is not an attorney, and has sought the help of a non-lawyer, non-paralegal Friend to create this Civil Action. However, Montgomery may not have the continued assistance of this Friend at further stages of this litigation. If that should occur, and even if it does not occur, Plaintiff Montgomery may not be able

to maintain, let alone win, this litigation. As such, Montgomery seeks appointed representation during this critical time.

According to **Bradshaw** v. **Zoological** Society of San. Diego,. 662 F.2d 1301 (9th Cir. 1981),

> The district court's decision, in the same order in which it denied Miss Bradshaw's first motion for appointment of counsel, to allow Miss Bradshaw to proceed in forma pauperis, a fortiori resolved the first issue under Caston in her favor. A lesser showing of indigency is required to satisfy the test for appointment of counsel. See Caston, 556 F.2d at 1309; Petete v. Consolidated Freightways, 313 F.Supp. 1271, 1272 (N.D.Tex.1970).
>
> 65
> Miss Bradshaw has also satisfied the second requirement; she has shown more than the requisite degree of diligence in her efforts to secure counsel. Affidavits filed with the district court in support of her motion indicate that she contacted more than ten attorneys, each of whom declined to represent her except upon financial terms that she was unable to meet. All that can be required of plaintiffs under this aspect of the test is that they make what can be considered a reasonably diligent effort under the circumstances to obtain counsel. There may be factors that would justify a lesser effort than that made here,45 but it is clear that Miss Bradshaw has done all that may reasonably be expected. She may not be required "to exhaust the legal directory" as a prerequisite to the appointment of counsel. Caston, 556 F.2d at 1309.

As such, Plaintiff Montgomery seeks, and herein moves for, appointment of a legal counsel in this Suit, pursuant to F.R.Civ.P. 23(g).

### Judgment Sought

Plaintiffs seek a declaratory judgment under Title 28 of the United States Code §§ 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure. This action arises under the Constitution of the United States, and particularly under the First, Seventh, Ninth, Tenth, and Fourteenth Amendments. The Seventh Amendment to the U.S. Constitution states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

Plaintiffs will be seeking reasonable attorney fees under Title 42 USC § 1988, 28 USC 2412. Plaintiffs seek reimbursement including under 5 USC § 702. Plaintiffs seek injunctive relief, both temporary and permanent. Plaintiffs seek equitable relief as well as money damages against all defendants. Plaintiffs seek restitution under 18 USC § 2412. Plaintiffs seek interest including pre-judgment interest against all defendants.

### General and Specific Personal Jurisdiction

Plaintiffs allege that all defendants, and each of them, resides, is found, has an agent, transacts his affairs, or owns property within the Western District of Washington, or acts to influence events and cause other effects there. The cause-of-action began in the Western District of Washington, in the Seattle area. No other venue is correct for all defendants.

Plaintiffs cite the Washington Long-Arm Statute (RCW 4.28.185) and may invoke Rule 4(k)(1)(A) and Rules 14 and 19 of the Federal Rules of Civil Procedure.

### Federal Civil Rights Jurisdiction

The Rainier Beach Pool is a facility owned and operated by the City of Seattle, for the use of the general public. It employs at least 15 employees, and this supplies the jurisdiction for the Title VII component of the 1964 Civil Rights Act, https://www.justia.com/employment/employment-discrimination/title-vii/ Further, the City of Seattle itself employs far more than 15 employees, further establishing Title VII jurisdiction. Seattle claims to employ just under 10,000 employees.

The Seattle Office of Civil Rights (SOCR) is a subsidiary of the City of Seattle, and both it and the City of Seattle employ more than 15 employees. Its website claims, in relevant part:        https://www.seattle.gov/civilrights

> "The Seattle Office for Civil Rights (SOCR) works to ensure that everyone in Seattle has equal access to housing, employment, public accommodations, and contracting. SOCR investigates and enforces City, State, and Federal anti-discrimination laws,..."

The pool is operated according to a time schedule, and is available at various times for 7 days per week, and an unknown number of days per year.

Since an unknown time, but approximately December 2013, and apparently continuing up to and including today, the Rainier Beach Pool has engaged in a discriminatory practice, violating the rights of people to use those pool services, and doing so on the prohibited bases of sex and religion. The Rainier Beach Pool sets aside a time for use exclusively by women, and prohibits the use of this time by men. However, it does not set aside an equivalent time for use exclusively by men, prohibiting the use of this time by women. As such, the Rainier Beach Pool is discriminating on the basis of sex: No woman is ever denied use of the Rainier Beach Pool when it is open, but men are repeatedly denied such use.

Further, this discrimination by sex is also based on a motive to discriminate by religion. The motive, as Plaintiff verified in many discussions with Pool staff, is to comport with the desires almost exclusively by Muslim and Jewish women, who wish to use the pool out of the presence of men, Muslim or non-Muslim. This is true, despite the apparent fact that the Muslim religion apparently allows swimming by both sexes together, on beaches and such.

That this was always known by the public to be intended as a discrimination by religion was established in 2012: The TV station KOMO ran a news item, still available

on the Internet, at:  https://komonews.com/news/local/seattle-announces-women-only-swimming-program

[partial quote begins]

"While this is a new program for the city, it's not the first time single-gender swimming has been offered at Seattle pools. A previous program used grant money to rent the pools for women-only swimming times, but that money has dried up."

"According to the city, the program will largely serve Muslim women, though orthodox Jews and various other women are expected to participate."

"The pools hosting single-gender swimming times will be Meadowbrook, Medgar Evers and Southwest pools. The program will also be extended to Rainier Beach Pool in fall 2013. "

[end of quote from KOMO TV in 2012]

This quote from KOMO TV establishes that ordinary citizens over the entire Seattle area were well-informed that the City of Seattle's core intent was to begin to discriminate on the basis of religion. Had this KOMO TV news report been false, then the City of Seattle had an opportunity and even an obligation to correct the record. Apparently, they never did so, because the message that was delivered was the one they intended to deliver.

## Events Leading to this Civil Action

On about October 8, 2017, Plaintiff Montgomery wanted to use the Rainier Beach Pool, for recreation and medical reasons, and went to the Rainier Beach Pool to use those facilities  Plaintiff Montgomery traveled to that Pool, presented himself for services, and was refused those services due to the discrimination by religion and sex as described above.

Plaintiff Montgomery asked why he could not swim and use the Rainier Beach Pool facilities, and was told that this time was set aside for women-only swimming. Montgomery then asked if there was an equivalent men-only swimming period that he

could use. The Pool staff informed Montgomery that no, there were no men-only equivalent swimming times allocated at that pool. Montgomery then asked if this complied with Federal anti-discrimination law, and was told something to the effect of, 'We don't know. This is how we operate this pool'. Further, the SOCR within days of that date, October 8, 2017 claimed to Montgomery that the 1964 CRA "didn't apply" because it did not cover violations on the basis of sex. That claim was erroneous. This amounted to a complete disregard for their obligations under 1964 CRA.

There is a record on the Internet of the announcement of this policy. See: https://komonews.com/news/local/seattle-announces-women-only-swimming-program , dated Thursday, December 20, 2012. So apparently this violation of Civil Rights had been going on for about five (5) years, at other pools, and perhaps for about four (4) years for this specific pool, Rainier Beach Pool, at the time Plaintiff Montgomery observed the discrimination.

In subsequent weeks after October 8, 2017, Plaintiff Montgomery did research on the Internet, discovering that there existed in Federal Law a Statute known as the Civil Rights Act of 1964, (Pub.L. 88–352, 78 Stat. 241, enacted July 2, 1964, (1964 CRA) and one of the provisions of that law (called "Title VII") held that in organizations employing 15 or more workers, the organization is prohibited from discriminating on the basis of a list of characteristics, including religion and sex. The requirement that the organization employ at least fifteen (15) employees is jurisdictional, but it is occasionally misunderstood to mean that Title VII only applies to Employment issues, and not general discrimination issues. In reality, however, Title VII applies to virtually all organizations with 15 or more employees, and covers all forms of discrimination.

The Rainier Beach Pool apparently employed over 15 employees, and it was and remains owned by the City of Seattle, which states in current website, accessed July 10,

2019, https://www.seattle.gov/personnel/employment/ , that the City of Seattle employs "nearly 10,000 employees".

Over subsequent weeks, Plaintiff Montgomery continued to approach the Rainier Beach Pool staff, in a respectful manner, and stated that he believed that the Rainier Beach Pool was covered by the 1964 CRA, and that it was prohibited from engaging in a number of types of discrimination, including on the basis of religion or sex. Yet, the Pool staff continued to refuse to correct its discriminatory actions. The discriminatory period offered was 1 hours of swimming on Sundays of the week, specifically starting at 4:00PM.

Convinced that the Rainier Beach Pool was knowingly and intentionally violating male citizens' rights under the 1964 CRA, and at a loss as to how he could get that Pool staff to cease violating the law, Plaintiff Montgomery searched for, found, and contacted a Civil Rights Organization apparently owned by Seattle and operating in the City of Seattle, called 'Seattle Office of Civil Rights', hereinafter SOCR. Montgomery carefully explained to SOCR what he understood to be the problem: The Rainier Beach Pool was apparently covered by the 1964 CRA, and it (or the City of Seattle, and apparently both) employed at least 15 employees, yet the Rainier Beach Pool was insisting on writing and enforcing a discriminatory schedule, allowing women-only swim periods, but not allowing equivalent-length men-only swim periods.

When Montgomery initially approached the SOCR, their staff stated and confirmed that the motive for the women-only swim times in the Rainier Beach Pool was to conform to the perceived desires of Muslim women. Later, weeks later, the staff of SOCR changed their stories, claiming that this policy didn't have anything to do with religion or religious issues.

Plaintiff Montgomery and the SOCR delivered written complaints to the Rainier Beach Pool during the 2017-2018 period.

Initially, the SOCR acted in a seemingly helpful matter, claiming that it would act on Montgomery's behalf. Apparently, the SOCR did indeed contact the Rainier Beach Pool, but over the next weeks and months the policies and practices of the Rainier Beach Pool did not change: The sex-based discrimination of the Rainier Beach Pool continued unabated, with no explanation or excuse provided the Montgomery or the public. Montgomery asked SOCR on multiple occasions if he, Montgomery, should file new complaints against the Rainier Beach Pool for subsequent dates of their civil rights violations. SOCR's response to Montgomery, on all such occasions, was that no, the initial complaint was sufficient and would cover all subsequent discriminatory periods as they occurred. Thus, the SOCR discouraged and impeded Plaintiff Montgomery from proceeding with further complaints or seeking their adjudication in courts of law, such as the Federal Court of the Western District of Washington, at Seattle.

During months subsequent to his initial approach to SOCR, Montgomery repeatedly reminded SOCR that not only was HE, Montgomery, being discriminated against, but in fact there was a whole class of people, men, who were likewise being discriminated against, being prohibited from having a women-only swim period, and being prohibited from swimming during the women-only times. SOCR didn't challenge this assertion, and in fact acceded to and agreed with this claim. But SOCR apparently did little or nothing that Montgomery could see over a period of nearly twelve (12) months.

Montgomery eventually received, approximately October 2018, an offer of about $845.92 in damages for his October-2017-filed complaint. However, Montgomery

replied that while he accepted that $845.92 for the first date of discrimination in about October 2017, subsequent dates of discrimination had continued to occur through October 2018 and well beyond, and in fact to today. Montgomery could not accept that the offer of $845.92 could have reasonably been sufficient to compensate for an entire year of continued discrimination, and perhaps 52 actual days (most and perhaps all Sundays) where the discriminatory policy was being upheld.

Not only would that have amounted to only $845.92 divided by 52 days, or about $16 per day, but worse the rest of the potential victims of this continuing discrimination not only would not be compensated at all, and even worse the discrimination would apparently be continuing, forever. Such an outcome could not possibly have been the legitimate intent of an organization such as SOCR.

In effect, the Rainier Beach Pool was attempting to "purchase" their de-facto continuing immunity to Civil Rights laws, merely by paying Montgomery a virtually insignificant sum, compared to the likely budget of the Rainier Beach Pool. This, Plaintiff Montgomery could not allow.

Plaintiff Montgomery stated to SOCR that he interpreted that offer should apply to the damages of the initial day of denial on October 8, 2017, the first day of violation motivating his initial complaint in that month. Montgomery pointed out that the only settlement capable of deterring future discriminatory behavior by the Rainier Beach Pool would be one that actually represented a sizeable fraction of the Rainier Beach Pool's operating budget. Since about one year had passed since the initial incident, and despite being contacted by SOCR, Rainier Beach Pool had not changed its policies. There was no reason to believe that a payment of $845.92 would correct the then-existing policy or deter future similar policies.

At that point, and continuing even today, July 12, 2019, about 1 years and 10 months later, the Rainier Beach Pool has failed and refused to correct its discriminatory conduct, and continues to offer periods of women-only swimming, and does not offer any periods of men-only swimming. All men other than Montgomery also continue to be treated to the same discriminatory violations. Effectively, the Rainier Beach Pool, assisted by the SOCR's deliberate negligence, "bought" immunity from Civil Rights Laws for an amount which so far is $0, or no money at all. This is the environment that currently exists, and is the one Plaintiff Montgomery is attempting to remedy.

## Discovery Needed

While the facts surrounding the pool-schedule discrimination that has occurred are apparently documented and established, for the additional purpose of establishing evidence of malicious intent and conspiracy between the SOCR and the Rainier Beach Pool, some discovery will be necessary. The SOCR and the Rainier Beach Pool interacted over a period of about a year, and then to a suspiciously-precise "offer" was made, precisely $845.92, when it is likely that a far shorter period, perhaps as low as a few weeks should have been sufficient to establish the impropriety of the Pool's discriminatory policy and have it corrected.

What was the reason for the delay? Were SOCR and Rainier Beach Pool staff in continued communication? What did they discuss? Were they simply trying to "wait out" Plaintiff Montgomery, hoping he'd go away and cause them no more trouble? Did SOCR tacitly accept that the Rainier Beach Pool was going to continue that discriminate not only against Plaintiff Montgomery himself, but also potentially thousands of then-current and future male pool-users, and would never stop that treatment? Wasn't the SOCR suppose to protect all citizens from discrimination, whenever and whereever they

were informed it was occurring?

## ARGUMENT

Rainier Beach Pool initiated the violations by intentionally adopting a policy clearly violating Title VII of the 1964 Civil Rights Act, probably in late 2013. They then proceeded to execute that policy, denying all men the use of time periods in which the Rainier Beach Pool was clearly open, staffed, and available for swimming. That discrimiatory policy was intended to discriminate in favor of women, and especially Muslim women, and to discriminate against all men. They were motivated to discriminate on the basis of religion, too, and they announced that through the TV Station KOMO in December 2012, and possibly other news media outlets as well. The public became well-informed that the intent was always to discriminate on the basis of religion, and on the basis of sex.

The Rainier Beach Pool could have, but did not, set up balancing hours giving men the option of swimming during men-only times, but did not do so.

The Rainier Beach Pool continued in following their deliberately-discriminatory policy, even after they had been (apparently) informed by the SOCR that this policy violated Federal law, and Washington State law as well. This amounts to not merely knowingly following discriminatory practices, but in fact maliciously doing so.

The SOCR, unfortunately, fares little better in this matter. Plaintiff Montgomery alerted SOCR to the discrimination, which discrimination apparently the SOCR could not dispute. The SOCR eventually, about a year later, conceded that the discrimination was obvious. It should have taken SOCR little more than 2-3 days to check the policy

and the law, and send the Rainier Beach Pool a letter demanding that they cease that policy immediately. It is inexplicable why the Rainier Beach Pool did not promptly follow instructions from SOCR to stop discriminating on the basis of sex or religion. Probably the easiest and quickest way to accomplish this policy change would have been to initiate a new, men-only time period, of equal length to the women-only scheduled time. But, presumably the SOCR didn't suggest this obvious move, or the Rainier Beach Pool refused to do so.

## Damages Sought

Plantiff Montgomery seeks the following set of damages for himself, personally:

1. Approximately $845.92 per each day during and since October 2017 in which the Rainier Beach Pool has offered a scheduled swim period to women only, not counterbalanced by an equivalent swim period during that week offered to men-only. The value of $845.92 was the amount that was apparently offered to Montgomery as a settlement for the initial day of denial, October 8, 2017. This is believed by Plaintiff to be at least one day per week, Sunday.
2. Punitive damages of treble the value of $845.92/day of days described above in item 1, starting at least as early as two (2) weeks after the SOCR organization contacted the Rainier Beach Pool, but in no case more than three (3) weeks after Plaintiff Montgomery contacted the SOCR organization: Someone must be held liable for failing to correct the Rainier Beach Pool's discriminatory policies in a timely fashion.
3. $845.92 per day against the SOCR organization, according to the rule in item 1 above, starting at least as early as 2 weeks after Plaintiff Montgomery contacted

SOCR, at which point SOCR had the opportunity and an apparent obligation to research and identify the ongoing violations performed by the Rainier Beach Pool, but failed to correct Rainier Beach Pool's violations.

4. Punitive damages of treble the value of $845.92 per day starting at least as early as two weeks after defendant Montgomery contacted SOCR. SOCR will be unable to show why they were unable to get Rainier Beach Pool to cease its discriminatory conduct within a reasonable period of 2 weeks.

## CLASS ACTION DAMAGES

5. Damages to be set by the Court to the paid to each male pool user that used, or attempted to use, the Rainier Beach Pool during the period when the Rainier Beach Pool's discriminatory policy was in place, whether or not such user was denied usage due to Rainier Beach Pool's discriminatory policy, back to at least three (3) years prior to October 8, 2017, or about October 8, 2014.

6. Injunctive relief for all males who might use the Rainier Beach Pool, prohibiting that Pool from creating or following any policy which engages in Federally or State prohibited discrimination.

Version 2.1, 7/13/2019, 9:08 PM